**[J-96-2025, J-97-2025] [MO: Wecht, J.]**

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| IN RE: THREE PENNSYLVANIA SKILL AMUSEMENT DEVICES, ONE GREEN BANK BAG CONTAINING $525.00 IN U.S. CURRENCY, AND SEVEN RECEIPTS | : : : : : | No. 50 MAP 2024<br><br>Appeal from the Order of the Commonwealth Court at No. 707 CD 2023 entered on November 30, 2023, Affirming the Lower |
| APPEAL OF: COMMONWEALTH OF PENNSYLVANIA | : : : : : : : : | Court Order of the Dauphin County Court of Common Pleas at No. 2022-CV-06333-MD entered on March 23, 2023<br><br>ARGUED: November 20, 2025 |
| POM OF PENNSYLVANIA, LLC<br><br><br>v.<br><br><br>COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF REVENUE, AND CITY OF PHILADELPHIA,<br><br><br>APPEAL OF: COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF REVENUE | : : : : : : : : : : : : : : : : : | No. 2 EAP 2024<br><br>Appeal from the Order of the Commonwealth Court entered on January 16, 2024, at No. 418 MD 2018.<br><br>ARGUED: November 20, 2025 |

## CONCURRING AND DISSENTING OPINION

**JUSTICE BROBSON**  **DECIDED: June 15, 2026**

I agree with the Majority that the Pennsylvania Race Horse Development and Gaming Act (Gaming Act)[1] and Section 5513 of the Crimes Code[2] "work in tandem to

---

[1] 4 Pa. C.S. §§ 1101-1904.

[2] 18 Pa. C.S. § 5513.

identify the scope of lawful gambling activities [in Pennsylvania], particularly as it concerns the lawful operation of slot machines." (Maj. Op. at 39.) As the Majority observes, these statutes demonstrate that "activities that are 'lawfully conducted' under the Gaming Act are . . . not prohibited under the Crimes Code, but an activity that is *not* lawful under the Gaming Act remains subject to Section 5513(a) of the Crimes Code." (*Id.* at 40 (emphasis in original) (footnote omitted) (quoting 18 Pa. C.S. § 5513(e.1)(4)).)

With this interplay established, I further agree with the Majority that, in *In re: Three Pennsylvania Skill Amusement Devices, One Green Bank Bag Containing $525.00 in U.S. Currency, and Seven Receipts*, 306 A.3d 432 (Pa. Cmwlth. 2023) (en banc) (*Three Devices*), the Commonwealth Court erred by declining to look to the definition of "slot machine" provided in the Gaming Act to define that same term as used in Section 5513(a)(1) of the Crimes Code. This, in turn, led to the Commonwealth Court's erroneous holding that the slot machines at issue were not unlawful "slot machines" under Section 5513(a)(1) of the Crimes Code. Accordingly, I fully join the Majority Opinion insofar as it reverses the Commonwealth Court's order in the *Three Devices* case.

I depart from the Majority, however, with respect to its analysis and disposition of the appeal in *POM of Pennsylvania, LLC v. Department of Revenue*, 221 A.3d 717 (Pa. Cmwlth. 2019) (en banc) (*POM*). That appeal emanates from an order of the Commonwealth Court that denied an application filed by the Commonwealth of Pennsylvania, Department of Revenue (Revenue), seeking summary relief on a counterclaim that Revenue asserted against POM of Pennsylvania, LLC (POM).[3] In its counterclaim, Revenue sought to cast the Gaming Act as a comprehensive regulation of

---

[3] The Commonwealth Court's order, dated November 20, 2019, became final and appealable when the Commonwealth Court dismissed the counterclaim by separate order on January 16, 2024.

all slot machines in the Commonwealth of Pennsylvania. It asked the Commonwealth Court to declare

> that (a) the Gaming Act regulates the manufacture, possession and operation of slot machines; (b) the Gaming Act and its attendant regulations prohibit any person from possessing a slot machine unless lawfully manufactured by a licensed manufacturer; (c) the Gaming Act prohibits the possession and operation of any slot machines unless on the premises of a licensed casino facility; (d) POM's [machine] is an illegal gambling device under Title 4; (e) [POM's machine] is a "slot machine" under 4 Pa. C.S. §[ ]1103 and subject to a daily tax of 34% of its gross terminal revenue under 4 Pa. C.S. §[ ]1403(b); and (f) POM is a "manufacturer" and/or "supplier" under 4 Pa. C.S. §[ ]1103 and is required to have a license issued by the Pennsylvania Gaming Control Board [(Board)] under 4 Pa. C.S. §§[ ]1317 and/or 1317.1[.]

(Reproduced Record (R.R.) at 106a.) Revenue further sought the entry of an order that would (a) compel POM "to remove its machines from all Pennsylvania establishments" and (b) direct POM to "cease further sale and distribution of its machines" in Pennsylvania until it obtains appropriate licensure by the Board under the Gaming Act. (*Id.*)

As just explained, the Gaming Act provides for limited authority to engage in gambling that would otherwise be illegal under Section 5513 of the Crimes Code. To my mind, the Gaming Act does so not simply by how it defines terms like "slot machine," "manufacturer," and "supplier" in Section 1103, but also by how it uses those defined terms in the law's operative provisions. Specifically, the Gaming Act only permits limited lawful gambling, inclusive of slot machines, in the Commonwealth in facilities licensed by the Board—*i.e.*, "slot machine licensees"—and caps the number of slot machine licenses that the Board may issue. 4 Pa. C.S. §§ 1103 (providing definitions of "slot machine license" and "slot machine licensee"), 1301-1305.1 (outlining categories of slot machine licenses), 1307 (setting caps on number of slot machine licenses).

As for manufacturers, the Gaming Act requires any person who seeks to manufacture slot machines "for use in this Commonwealth" to obtain a license from the

Board.  4 Pa. C.S. § 1317.1(a).  As noted above, however, slot machines are only lawful "for use in this Commonwealth" in facilities licensed by the Board.  Accordingly, a manufacturer license is required for any person who seeks to manufacture a slot machine for use in this Commonwealth by a Board-licensed facility in the Commonwealth.  Even if one falls within the definition of a "manufacturer" under Section 1103 of the Gaming Act, if a manufacturer does not seek permission to use its slot machine in Board-licensed facilities in the Commonwealth, it is not required to secure a manufacturer license under Section 1317.1.  Indeed, a manufacturer license from the Board is not available to a manufacturer that exclusively offers its machines for use in unlicensed facilities within the Commonwealth.

As for suppliers, the Gaming Act only requires a person to secure a supplier license from the Board if that person seeks "to provide slot machines . . . to a slot machine licensee, an interactive gaming certificate holder or an interactive gaming operator within this Commonwealth through a contract with a licensed manufacturer."  4 Pa. C.S. § 1317(a).  Accordingly, even if one falls within the definition of "supplier" in Section 1103 of the Gaming Act, if a supplier does not seek to supply slot machines to licensed or certificated facilities through a contract with a licensed manufacturer, then the supplier need not secure a license under the Gaming Act.

While POM may technically fall within the definitions of "manufacturer" and "supplier" within Section 1103 of the Gaming Act, and its machines may likewise qualify as "slot machines" thereunder, POM does not purport to manufacture or supply its slot machines for use within licensed or certified gaming facilities under the Board's jurisdiction.  Indeed, POM's activities within the Commonwealth that are the subject of these appeals exclusively relate to the manufacture and supply of slot machines for use in facilities that are not licensed by the Board and, therefore, are engaging in illegal

gambling in violation of Section 5513 of the Crimes Code. Manufacturer and supplier licenses under the Gaming Act are not available to manufacturers and suppliers who seek to facilitate illegal gaming in the Commonwealth by placing their machines in unlicensed facilities.

For these reasons, I would conclude that Revenue is not entitled to its requested relief to the extent that request was premised on the theory that POM's activities of manufacturing and supplying slot machines to unlicensed facilities within this Commonwealth required POM to secure a manufacturer license and/or supplier license under the Gaming Act and that the daily gross terminal revenue tax of 34% that slot machine licensees must pay under Section 1403(b) of the Gaming Act applies to POM's slot machines in unlicensed facilities throughout the Commonwealth. As such, and any flawed reasoning aside, the Commonwealth Court appropriately denied Revenue's application for summary relief and dismissed its counterclaim. Accordingly, I would affirm the order of the Commonwealth Court in the *POM* matter.

Justice Mundy joins this concurring and dissenting opinion.